## ABIJAH WHETSTONE
### *v.*
### THOMAS COLLEY.

1. PROMISSORY NOTE — *payable in gold.* A judgment on a promissory note, payable, in express terms, "in gold," can be entered up, for the face of the note and interest, in dollars only.

VALUE OF GOLD — *not a subject for consideration.* The value of gold, over legal tender notes, is not a subject for consideration, in an action brought on such a note.

APPEAL from the Circuit Court of Adams county; the Hon. J. SIBLEY, Judge, presiding.

This was an action of assumpsit. The declaration contains three special counts and common counts.

The first count is as follows:

"Thomas Colley, the plaintiff in this suit, complains of Abijah Whetstone, the defendant herein, in a plea of trespass on the case upon promises, for that whereas heretofore, to wit, on the 17th day of July, A. D. 1862, to wit, at the county aforesaid, said defendant, in consideration of one hundred and fifty dollars in gold then and there delivered the said defendant by said plaintiff, made and entered into a written contract with said plaintiff, in the words and figures following, to wit:

'$150.00.    On or before the first of March next, for value received, I promise to pay Thomas Colley one hundred and fifty dollars, with ten per cent. interest from date, in gold. July 17, 1862.                     ABIJAH WHETSTONE.'

Whereby said defendant agreed to and with said plaintiff to pay and deliver to him, said plaintiff, one hundred and fifty gold dollars, on or before the first day of March, A. D. 1863, together with interest thereon, at the rate of ten per cent. per annum, from and after the 17th day of July, 1862, to wit, at the county aforesaid; and said plaintiff avers, that the said first day of March, 1863, the time when said one hundred and fifty gold dollars and interest, by the terms of said contract, were to have been delivered to him by said defendant, has long

since elapsed; and plaintiff further in fact avers, that heretofore, to wit, when said time elapsed, and since, to wit, at the county aforesaid, he has demanded of and from said defendant, the said one hundred and fifty gold dollars and interest thereon; plaintiff further in fact avers, that, to wit, on the first day of March, A. D. 1863, said one hundred and fifty gold dollars, with interest thereon, were of great value, to wit, of the value of five hundred dollars, to wit, at the county aforesaid, and that said defendant did not deliver or pay the same to said plaintiff upon said demands, or either of them, but refused to do so, and still does refuse, to wit, at the county aforesaid; by means whereof, the said defendant became liable to pay to said plaintiff the price and value of said one hundred and fifty gold dollars, to wit, the sum of five hundred dollars aforesaid, to wit, at the county aforesaid, and being so liable, in consideration of the premises, the said defendant then and there undertook and faithfully promised to pay to said plaintiff the said price and value of said one hundred and fifty gold dollars, to wit, at the county aforesaid, when he should be thereunto afterwards requested."

Second count declares upon the same instrument as a promissory note, averring the value of the one hundred and fifty dollars in gold and interest, to have been five hundred dollars at the maturity of the note.

Third count declares upon the same instrument as a promissory note, simply.

Fourth count. *Indebitatus assumpsit* for gold sold and delivered; gold coin sold and delivered; bullion sold and delivered; money lent, and interest.

Plea, general issue.

Trial by the court, April 8th, 1864.

The plaintiff offered and read in evidence the note set out in the first count of the declaration, with a credit indorsed as follows: "1863, July 17th. Received the interest on this note." Plaintiff then introduced as a witness one William Ketchum, who testified that at the date of said note he was at the plaintiff's house, the defendant and Mrs. Colley, the plaintiff's wife,

being also there present; defendant asked Mrs. Colley to lend him one hundred and fifty dollars; plaintiff's wife then said that she had no money except gold, and that she did not wish to lend unless the same was to be paid back in gold; the defendant then said if she would loan it to be paid back in March next, he would then pay it back in gold; she then brought out the money in gold, done up in a bag, and counted out one hundred and fifty dollars in gold, which the defendant took, and executed the note which has been read in evidence; the transaction took place near Augusta, Hancock county, on the day of the date of the note; the plaintiff was present, and his wife was doing the business for him, he being deaf. The defendant objected to the admission of the testimony of Ketchum, and every part thereof, at the time of the giving of the same, on the ground that it was irrelevant, and tended to vary the terms of the said promissory note. Objection overruled, and exception taken.

Plaintiff then called as a witness one Egbert Hoffman, who testified that he had been engaged in the business of banking, at Quincy, Adams county, Illinois, for the last three years; that on March 1st, 1863, at Quincy, gold was worth sixty-seven cents premium over United States legal tender treasury notes; that at Augusta, Hancock county, the premium of gold would naturally be about the same as at Quincy. Defendant objected to the admission of the said Hoffman's evidence, and every part thereof, at the time the same was given, upon the ground that the same was irrelevant to the issue, and not legitimate as evidence in respect to the measure of the plaintiff's damages. Objection overruled, and exception taken.

The foregoing was all the evidence given or offered at the trial. The court found the issue for the plaintiff, and assessed his damages at two hundred and thirty-five dollars and fifty cents, to which finding and assessment the defendant excepted.

The defendant then moved for a new trial, for the following reasons: 1st. That the court, upon the trial of the cause, admitted improper evidence on the part of the plaintiff; 2nd. That the damages assessed by the court were excessive. Motion over-

ruled, and exception taken.    The court then rendered judgment for the plaintiff for $235.50, to which the defendant excepted, and then and there took and filed his bill of exceptions, which contains all the evidence and exceptions aforesaid.    Appeal prayed on the day of the trial, and granted on filing bond within sixty days.    Appeal bond filed April 13th, 1864.

The following are the errors assigned :

1.    The court erred in admitting improper evidence for appellee.

2.    The court erred in assessing the appellee's damages at $235.50, the same being excessive, and more than the evidence warranted.

3.    The court erred in overruling the appellant's motion for a new trial.

4.    The court erred in rendering judgment for the appellee for $235.50 damages, such damages being excessive, and more than were legally proven to have been sustained by appellee.

Messrs. BUCKLEY, WENTWORTH & MARCY, for the Appellant.

Messrs. GRIMSHAW & WILLIAMS, for the Appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit on a promissory note of the following tenor :

"$150.    On or before the first of March next, for value received, I promise to pay Thomas Colley one hundred and fifty dollars, with ten per cent. interest from date, in gold.    July 17, 1862."

It is averred in the first count of the declaration, that at the time the note matured, one hundred and fifty gold dollars, with the interest thereon, were of the value of five hundred dollars, and that the defendant did not deliver the gold upon demand made, but refused so to do ; by means whereof, the defendant became liable to pay the price and value of the said one hundred and fifty dollars.    The second count is not essentially different

from the first count. The third count is upon the instrument as a promissory note, simply. The fourth is *indebitatus assumpsit* for gold sold and delivered; gold coin sold and delivered; bullion sold and delivered; money lent, and interest.

The general issue was pleaded, and tried by the court.

The plaintiff proved the loan of one hundred and fifty dollars in gold coin, to be returned in gold, as stipulated in the note. He also proved, that at the maturity of the note, gold was at a premium of sixty-seven cents over legal tender treasury notes. The testimony, on both these points, was objected to by defendant, and exceptions taken.

The court found the issue for the plaintiff, and assessed the damages at two hundred and thirty-five dollars and fifty cents. A motion for a new trial was made and overruled, and exception taken. Judgment was thereupon rendered for the plaintiff for the damages so found, and costs of suit.

The case is brought here by appeal, and it is assigned for error, 1st, admitting improper evidence for the plaintiff; 2nd, in assessing the damages at $235.50, as excessive, and more than the evidence warranted; 3rd, overruling the motion for a new trial.

The only important question presented by the record is, did the court adopt the true measure of damages?

The appellee insists the court adopted the true measure, by fixing the damages at the value of gold at the time it should have been redelivered, without allowing any interest. He argues, if, in place of a transfer of coin, gold dust had been transferred, and the agreement had been to return so many ounces of gold dust, the measure of damages would have been the value of the ounces of gold dust delivered, at the time it should have been so redelivered.

This may be admitted, but it is not the case made by the proof. The instrument sued on, is an ordinary promissory note, and manifests the most common transaction of loaning and borrowing money. It is a promise to pay money by a particular day, and is not the less such a promise, because a well known kind of money is stipulated to be paid. The proof shows it was a lending and borrowing of money — no more, no less.

The appellee assumes the position that gold coin is no longer the currency of the country, but has become an article of merchandise merely, and that a stipulation to deliver or pay such coin can be specifically enforced by a suit at law, or, what is the same thing in effect, damages recovered for the non-performance of such contract. A promise, by note, to pay one hundred and fifty dollars in gold, is nothing more than a promise to pay one hundred and fifty dollars, and a judgment on such note could only be for one hundred and fifty dollars, with interest as stipulated. Under the acts of Congress of February 25, and July 11, 1862, called the legal tender laws, how could such a note be paid?

Those acts provide, that the notes issued under their authority "shall be lawful money, and a legal tender in the payment of all debts, public or private, within the United States." This note is a private debt, and, consequently, could be discharged by the payment of treasury notes of the kind specified in these acts, no question being made as to the constitutional power of Congress to make such enactments; indeed, that point is conceded by counsel on both sides. It is conceded by them that Congress has full power, under the constitution of the United States, to make money out of paper, to transmute paper, so to speak, into coin, give to it the impress of its sovereignty, and make it a legal tender, equally with gold and silver, and to be received, as gold, in payment of all private debts. This being conceded, we cannot see what foundation there is for appellee's claim. His debt is a private debt. Treasury notes are equal, by congressional legislation, to gold, in the discharge of such debts, and how can the creditor claim more? It is true, so far as value is concerned, those notes are far below gold coin to-day, but suppose they should appreciate in value from this time onward, and become at par with gold, would it not be unjust for appellee to have a judgment greatly beyond the amount due by his note, and which can only be discharged by gold or by treasury notes, equal, at the time of payment of the judgment, to gold?

Judgments are not rendered, and cannot be rendered, without

an act of the legislature, in anything but dollars. Counsel concede, Congress can say what a dollar shall be, and in such dollars can the judgments of courts be paid. It is the declaration of Congress, that bestows upon a piece of gold the value of ten dollars. If it be one-half base metal, still, Congress can put its *impress* upon it, and thus make it standard gold. So with the treasury notes; it is admitted by these parties they are made money—coin, if you please—by act of Congress, and must pass in all private transactions at their declared value, and all money judgments rendered by the courts, between individuals, being entered up for dollars, can be discharged, dollar for dollar, in those notes. No matter if they are not worth ten per cent. of their face, they are by law, it is admitted by counsel, gold dollars, and as valuable as gold coin in all private transactions, and must perform all the functions of coined money.

Since counsel admit Congress has the power to pass these acts, making promises to pay dollars a legal tender in payment of gold dollars, it follows, no description of contract whatever, however worded, to pay gold dollars, can deprive the debtor of his right to pay and discharge his contract in these notes. The morality of such conduct is not for us to consider. Whatever these acts of Congress may declare, an honest man is slow to believe in the justice of paying a debt due in gold, and created by the actual receipt of gold, with paper of not half the value of the gold. Such laws, in the opinion of men of a nice sense of personal or commercial honor, cannot relieve a party taking advantage of them, from the odium which must attach to such conduct.

As these laws exist, and are admitted to be constitutional enactments, there can be no mode provided by which parties can recover what is justly due, who, in good faith, have loaned their gold to be returned in gold, save by some enactment of the legislature, by which such contracts may be specifically enforced, or adequate damages recovered. No man who borrows gold coin, or contracts a debt to be paid, specifically, in gold or silver, should have the power to evade his obligations,

or fulfill them by tendering payment in anything of greatly inferior value.    Even such a law, existing, as it does, in one of our sister States, is held by eminent jurists unconstitutional, which it clearly is, if the acts of Congress making these notes a legal tender, are constitutional.    If that act is constitutional, it must be as supreme over any State law as it is over individuals.

If it is not competent to the legislature ·to pass such a law, then these acts of Congress, being conceded to be constitutional, must have full effect, and in their operation, crush all the efforts of legislative wisdom to defeat them.

The parties having conceded the constitutionality of these "legal tender acts of Congress," we are compelled to say, the Circuit Court erred in the measure of damages, and in receiving the testimony of the witnesses as to the value of gold compared with legal tender treasury notes.    The case was to be ·proved by the note, and the laws applicable to it, and the simple duty of the court was, to render judgment in dollars for the amount of the note and interest.

The judgment of the Circuit Court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*